**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| R & K Realty, | : | Case No. 5:21-1430 – MJC |
| | : | |
| Debtor. | : | |
| | : | |

**M E M O R A N D U M**

## I.      Introduction

Prior to the commencement of this involuntary Chapter 7 bankruptcy case, Kurt A.

Thompson ("Kurt"), one of the two (2) general partners of R & K Realty, a general partnership

("the Alleged Debtor" or the "Partnership"), instituted an action in state court seeking, inter alia,

an accounting and dissolution of the Partnership due to alleged breaches of fiduciary duties and

mismanagement by the managing partner, Richard C. Thompson, Jr. ("Richard, Jr."), who is also

Kurt's brother.  The state court action progressed to the point where the state court appointed a

receiver to collect rents on behalf of the Partnership and ordered Richard, Jr. to turn over the

financial records to the receiver.

Shortly after the June 25, 2021 hearing at which the state court confirmed the

appointment of the receiver and defined his duties, Richard, Jr. filed the involuntary petition.

Kurt opposes the involuntary petition and filed a timely answer pursuant to Federal Rule of

Bankruptcy Procedure 1011, requesting that relief be denied.  Kurt contends that even if the

statutory elements are met under 11 U.S.C. §303 for an involuntary petition, the petition should

1

be dismissed under §305(a),[1] and the dispute between the general partners be allowed to return to the pending state court action.

As explained below, I find that Kurt has not met his burden to establish that the interests of creditors and the Alleged Debtor would be better served by dismissal or abstention. Accordingly, I will deny the motion to dismiss and enter an order for relief.

## II.  Procedural Posture

As stated above, on June 25, 2021, Richard, Jr. filed an involuntary Chapter 7 bankruptcy petition for the Partnership.  Doc. # 1.  On June 28, 2021, the Clerk issued a Summons to the Alleged Debtor.  Doc. # 2.  On July 15, 2015, in response to the involuntary petition, Kurt filed an answer and objection ("the Answer"), Doc. # 6, a Motion to Dismiss or Abstain Pursuant to §305 of the Bankruptcy Code, Doc. # 7, and a Motion for Appointment of an Interim Trustee pursuant to §303(g) of the Bankruptcy Code, Doc. #8.  As requested by the Court, the parties filed legal briefs on the Motion to Dismiss or Abstain Pursuant to §305 of the Bankruptcy Code ("the Motion to Dismiss") in advance of the evidentiary hearing held and concluded on August 27, 2021.[2]  The Motion to Dismiss is now ripe for disposition.

## III.  Findings of Fact

Based upon the testimony and documentary evidence introduced, I make the following findings of fact:

---

[1]    Further statutory references will be to Title 11 of the United States Code.

[2]    At the August 27, 2021 hearing, three (3) witnesses testified: Richard, Jr., Kurt, and the attorney for the Partnership, Jason Confair, Esquire.  Kurt introduced Exhibits M-1, M-2, M4, and M-18, which were admitted. Richard, Jr. introduced Exhibits P-1 through P -7, which were admitted.

2

1. The Alleged Debtor is R & K Realty, a general partnership.

2. The general partners of the Alleged Debtor are Richard, Jr. and Kurt, who are brothers. They each own 50% of the Partnership. See Ex. P-7.

3. Richard, Jr. has been acting as the managing partner of the Alleged Debtor since approximately 2011. See Ex. P-7.

4. The records of the Partnership are somewhat in disarray. Richard, Jr. testified that he is attempting to locate several boxes of financial records for the Partnership. N.T. at 1:03 – 1:05.

5. The Alleged Debtor owns seven (7) parcels of real property located in Lycoming and Clinton Counties, Pennsylvania ("the Properties"). See Ex. M-1, M-4.

6. The Properties consist of two (2) commercial properties and five (5) residential properties which the Partnership leases to tenants. N.T. at 2:41.[3]

7. Certain Properties are not currently rented because some units are in disrepair, cannot be inspected, and therefore, are not bringing in rental income.[4] Id. at 1:10 – 1:12.

8. Payment of rent for the units that are being rented by individuals was described as "very sporadic." Id. at 1:16 – 1:17.

9. Several of the Properties have mortgages held by Citizens and Northern Bank. See Ex. M-1.

10. The Partnership pays approximately $3,400 per month to service the existing mortgages to Citizens and Northern Bank. N.T at 2:19 – 2:20; 3:28 – 3:29.

---

[3]    The August 27, 2021 evidentiary hearing was not transcribed; therefore, reference to the Notes of Testimony ("N.T") will be to the time of day for the audio recording of the hearing.

[4]    Richard, Jr. testified that some of the rental units have the personal property of the Partnership, Richard, Sr. and Richard, Jr. stored in them. No rent is being collected for those particular units. N.T. at 1:13. He testified that approximately 40% of the units are currently vacant. Id. at 3:27 – 3:28.

3

11.    Kurt testified that pursuant to a payment history he obtained from the banks for the period January 1, 2018 through July 23, 2021, the payments on the Citizens and Northern Bank mortgages were being made regularly.  Id. at 1:53 – 1:54.

12.    Richard Thompson, Sr. ("Richard, Sr.") holds a $285,000 Demand Promissory Note ("the $285,000 Demand Note") against the Partnership, which is secured by a mortgage against the Partnership's commercial properties.[5]  See Ex.'s P-3, P-5, P-6.

13.    Creditor Clair D. Thompson & Sons, Inc. holds a $150,000 Demand Promissory Note against the Partnership, which is an unsecured obligation.  Ex. P-4.

14.    Both Richard, Jr. and Kurt testified that real estate taxes on the Properties have not been paid for 2019 through and including the current year.[6]  N.T. at 1:54 – 1:55.

15.    Pursuant to a stipulation of the parties, the real estate taxes on the Properties have not been paid since 2019 and the amount of outstanding taxes was $46,389.87.[7]  Id. at 2:01 – 2:03.

16.    At the time the involuntary petition was filed, a tax sale was scheduled for September 2021 and several of the Properties are subject to the Lycoming County tax sale.[8]  Ex. P-2; N.T. at 2:02.

---

[5]    There was a significant dispute as to whether the property located at 1465 Dix Street, Williamsport, Pennsylvania was a gift from Richard, Sr. to the Partnership.  The 1465 Dix Street property appears to be collateral for the $285,000 Demand Note.  See Ex. 5.  There was no indication that Richard, Sr. has demanded payment under the $285,000 Demand Note and thus, it does not appear that the Partnership currently owes payments to Richard, Sr.  For purposes of this decision, it is therefore not necessary to resolve the issue of whether this is a valid debt of the Partnership.

[6]    Kurt testified that it was common practice for the Partnership to pay only the amount necessary to keep the Properties from being sold at the tax sale, i.e., the oldest year outstanding.  N.T. at 1:54 – 1:55; 2:00 – 2:01.

[7]    The parties were not clear as to what year(s) the stipulated amount related.  I would also note that according to the Lycoming County tax records as of August 23, 2021, the total amount due for real estate taxes is $79,908.82.  See Ex. P-2.

[8]    Kurt indicated he had funds available to keep the Properties from being sold at a tax sale.  He further indicated that he had a "plan" to turn the Partnership around by bringing the Properties "up to code" and he had funds available to pay the real estate tax arrears and mortgage arrears, if any.  N.T. at 2:03 – 2:05.  The plan was never fully disclosed.  As to the availability of funds, Kurt testified that he is currently out of work and has a pending worker's compensation claim that was initially denied but is in litigation.  Id. at 2:08 – 2:10.  He also stated,

17. The Partnership is currently averaging $5,000 per month in rental income.[9] N.T. at 3:28 – 3:29.

18. Richard, Jr. testified that the Partnership is unable to pay its monthly expenses.[10] Id. at 3:30 – 3:31.

19. The Partnership has monthly expenses of approximately $5,574 per month.[11]

20. The Partnership does not maintain any bank accounts.[12] Id. at 3:31 – 3:32.

21. The Partnership has not filed tax returns since 2012. Id. at 3:35 – 3:36.

22. On January 25, 2021, Kurt instituted a civil action in the Pennsylvania Court of Common Pleas, Lycoming County ("the CCP Action") (Case No. 21-0071) against Richard, Jr., Richard, Sr., and the Partnership. Ex. P-7.

23. By his state court complaint, Kurt sought to dissolve the Partnership, liquidate the Partnership's assets, and avoid certain mortgages granted to Richard, Sr. Id.

---

unclearly, that he holds Partnership funds of approximately $30,000 that had been collected from rents during various years, as well as funds taken from the Partnership bank account. Id. at 2:13 – 2:17.

[9] Given Richard, Jr.'s testimony regarding his inability to locate and turnover the Partnership's financial records, this estimation is somewhat questionable. However, no countervailing evidence – testimonial or documentary – was presented so I will credit his testimony.

[10] Richard, Jr.'s testimony regarding the Partnership's monthly utility expenses was vague and lacking in any type of precision. He testified that the Partnership pays a minimum of $10,000 per year for water and sewage on the Jersey Shore Properties, with an additional $300 per month for the Island Property. No amount was provided for electricity. He further testified that fire and casualty insurance on the Properties was approximately $8,000 per year and flood insurance fluctuated but was currently approximately $4,500 per year. Based upon the above estimations, the Partnership appears to expend approximately $2,174 per month in utilities. Richard, Jr. testified that some of the utilities are currently past due. N.T at 3:30 – 3:31.

[11] This is amount is comprised of $3,400 for the mortgages to Citizens and Northern Bank and $2,174 in utilities.

[12] Richard, Jr. testified that the Partnership pays its expenses in cash or uses his personal checking account. N.T. at 3:31 – 3:32.

5

24. On April 23, 2021, Kurt petitioned the CCP Court to appoint a receiver.[13] See Doc. # 7, Ex. B.

25. After a hearing on May 20, 2021, the CCP Court determined that a receiver was necessary and appointed J. David Smith, Esquire as the receiver ("the Receiver"). See Doc. # 7, Ex. C (CCP Court Order dated May 25, 2021).

26. The CCP Court's May 25, 2021 Order held the Receiver's duties in abeyance until a further hearing could be held to confirm and set the terms of the appointment. See id.

27. At the June 25, 2021 hearing, the CCP Court confirmed the Receiver's appointment. See Doc. # 32, Ex. B.

28. The CCP Court entered an Order outlining the Receiver's duties on July 19, 2021. Id.

29. The Receiver has not taken any action under the July 19, 2021 Order. See Doc. # 32, Ex. C.


## IV. Standards of Review

### A.    11 U.S.C. §303

Section 303 is the relevant section governing the requirements that must be established before an order for relief may be entered in an involuntary bankruptcy filing. 11 U.S.C. §303. More specifically, §303(b)(3) deals with partnership filings. It provides that "an involuntary petition can be filed against a partnership by (a) fewer than all of its general partners, or (b) if all the general partners are in bankruptcy, a general partner, trustee of a general partner, or holder of

---

[13]    In addition to the evidence presented at the hearing, I take judicial notice of the docket and filings in the CCP Action for the purpose of establishing the timing of certain events in, and status of, the CCP Action. See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607, at *1 n.1 (Bankr. E.D. Pa. Aug. 26, 1998); see also In re Indian Palm Assocs., Ltd., 61 F.3d 197, 205 (3d Cir. 1995).

a claim against the partnership." 2 Collier on Bankruptcy ¶ 303.17 (Richard Levin & Henry J. Sommer eds., 16th ed. 2013). In the case of a partnership filing, §303(b)(3) eliminates a petitioner from having to allege and prove the requirements under §303(b)(1) and (2), however, the petitioner must still satisfy the requirements under §303(h).

Pursuant to §303(h), if a petition is not timely controverted, the court shall order relief against the debtor in an involuntary case. Otherwise, the Court shall order relief only if:

> 1.) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide disputer as to liability or amount; or

> 2.) within 120 days before the date of the filing petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

11 U.S.C. §303(h).

The parties have agreed that an order for relief can be entered pursuant to §303(h)(2) because, as set forth above, a receiver had been appointed in the CCP Action within 120 days before the date of the filing of the petition. N.T. at 1:00 – 1:01. However, Kurt still seeks to challenge the propriety of the bankruptcy case by seeking a dismissal pursuant to 11 U.S.C. §305(a).

**B. 11 U.S.C. §305(a)**

Section 305(a)(1) provides:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if -- (1) the interests of creditors and the debtor would be better served by such dismissal or suspension.

7

Relief granted under §305(a) is considered an "extraordinary remedy." In re Mylotte,

David & Fitzpatrick, 2007 WL 3027352, at *5 (Bankr. E.D. Pa. Oct. 11, 2007). It is determined

based on the totality of the circumstances. In re Macke Int'l Trade, Inc., 370 B.R. 236, 247

(B.A.P. 9th Cir. 2007); Mylotte, 2007 WL 3027352 at *5. The burden of proof on a motion

pursuant to §305(a) is on the party seeking dismissal or abstention. In re CWNevada LLC, 602

B.R. 717, 741 (Bankr. D. Nev. 2019); In re RHTC Liquidating Co., 424 B.R. 714, 720 (Bankr.

W.D. Pa. 2010); Mylotte, 2007 WL 3027352 at *5.

"The key issue in determining the propriety of a §305 dismissal is whether it will serve

the best interests of both the [d]ebtor and the creditors." In re O'Neil Vill. Pers. Care Corp., 88

B.R. 76, 79 (Bankr. W.D. Pa. 1988) (citations omitted); accord RHTC Liquidating Co., 424 B.R.

at 720.

The Mylotte Court succinctly described the relevant factors to be considered when

deciding whether to dismiss or abstain:

> (1) economy and efficiency of administration; (2) whether
> another forum is available to protect the interests of both parties or
> there is already a pending proceeding in a state court; (3) whether
> federal proceedings are necessary to reach a just and equitable
> solution; (4) whether there is an alternative means of achieving the
> equitable distribution of assets; (5) whether the debtor and the
> creditors are able to work out a less expensive out-of-court
> arrangement which better serves all interests in the case; (6)
> whether a non-federal insolvency has proceeded so far in those
> proceedings that it would be costly and time consuming to start
> afresh with the federal bankruptcy process; and (7) the purpose for
> which bankruptcy jurisdiction has been sought.

2007 WL 3027352 at *6.

## V. Discussion

Kurt moves for dismissal and/or abstention because he believes that this bankruptcy case serves only to delay the CCP Action where a Receiver has been appointed and the parties to the CCP Action have been under an order to collect rents and provide missing information since May 2021. Kurt argues that the CCP Court is adequately equipped to handle a liquation of the Partnership and the liquidation will essentially be the same in either forum. Kurt further argues that the bankruptcy filing was a tactical move on Richard, Jr.'s part to protect his own dilatory conduct and breach of fiduciary duties to the Partnership. Kurt likens this case to cases where the Bankruptcy Court found dismissal appropriate because the petitioning creditors were using the Bankruptcy Court as an alternative forum to resolve intra-company management and stockholder problems as opposed to obtaining an orderly distribution of creditor claims. See e.g., In re Fax Station, Inc., 118 B.R. 176 (Bankr. D. R.I. 1990).

Not surprisingly, Richard, Jr. argues that Kurt has failed to meet the stringent burden under §305(a). He maintains that the bankruptcy petition was warranted because the Partnership is not able to pay its debts as they fall due. He believes that a Chapter 7 Trustee will quickly and more efficiently than a state court receiver, wind up and liquidate the Partnership. Richard, Jr. asserts that Chapter 7 has the added advantages of the automatic stay, the Chapter 7 Trustee can file any necessary avoidance actions, and a Chapter 7 Trustee will be less expensive than a state court receiver.

Upon consideration of all the evidence, I conclude that Kurt has not met his burden under §305(a) and dismissal and/or abstention is not appropriate in this instance.

During the hearing, it became very evident that Richard, Jr. and Kurt have not been getting along for many years and the Partnership has suffered from the lack of effective

9

management.  Nevertheless, there appears to be a strong consensus between the brothers to have the Partnership dissolved and its assets liquidated.  The disagreement is mainly over the proper forum (i.e., the CCP Court or the Bankruptcy Court) to accomplish winding up the affairs of the Partnership.

Turning to the applicable test, Kurt did not convince me that dismissal would benefit the interests of the Partnership and the creditors, such that dismissal of this case is warranted.  I note that Kurt has made no specific argument as to how the Partnership's creditors would be better served in the CCP Action.  Kurt's arguments focus mainly on the Partnership's interests and what Kurt perceives as an improper bankruptcy filing.

To the contrary, I find there is a legitimate bankruptcy purpose to be served by the Chapter 7 petition.  The evidence establishes that the Partnership is unable to meet its expenses based on the limited rental income that the Partnership is currently receiving.  More importantly, the Partnership is facing an imminent tax sale of its Properties for substantial real estate tax arrears, which has been ongoing since 2012.  In this respect, a bankruptcy case is beneficial to both the Partnership and the creditors because the automatic stay will preserve the status quo until an orderly accounting of assets and claims can occur by a Chapter 7 Trustee.  I also credit the fact that Richard, Jr., the acting managing partner, believed that filing for bankruptcy was in the best interest of the Partnership to wind up its business.

Kurt's strongest argument in favor of dismissal is that the CCP Action is pending and the Receiver is in place to liquidate the Partnership assets and to adjudicate the general partner's rights.  I acknowledge that the CCP Action and the appointment of the Receiver is an important factor in determining whether to dismiss or abstain under §305(a).  Frequently, courts have dismissed an involuntary petition where it was filed after the commencement of a state court

10

receivership, the state court determined that a receiver was warranted, and the state court provided a more economical and efficient method for dissolving and liquidating the partnership's assets. See, e.g., In re Williamsburg Suites, Ltd., 117 B.R. 216 (Bankr. E.D. Va. 1990).

However, under the circumstances of this case, I give this factor less weight overall. See In re AMC Investors, LLC, 406 B.R. 478, 488 (Bankr. D. Del. 2009) ("While all factors are considered, they are not given equal weight in each case, nor should the Court conduct a strict balancing."). That is because the CCP Action was filed in late January 2021 and the Receiver was appointed on May 20, 2021 and "confirmed" on June 25, 2021. Richard, Jr. filed the involuntary petition later in the day on June 25. It is uncontested that the Receiver has taken no action with respect to his duties given the timing of this bankruptcy filing.

To date, the CCP Court has ordered Richard, Jr. to produce records with respect to the Partnership's finances and has ordered that the Receiver should collect rents and pay expenses and shall be compensated at the rate of $250.00 per hour.[14] Admittedly, it would have been a closer call if the Receiver had undertaken substantial actions in preparing an accounting and liquidating the Partnership's assets. See e.g., In re Packard Square LLC, 575 B.R. 768, 779 (Bankr. E.D. Mich. 2017) ("when the debtor has been in receivership for so long that the bankruptcy case would be duplicative and wasteful" dismissal was appropriate) (citation omitted); In re Onyx Records, Inc., 42 B.R. 156, 157 (Bankr. S.D.N.Y. 1984) (involuntary petition dismissed where state court receivership had been in existence for over seven years and significant amount of testimony and documentation had been accumulated). However, that is not the case.

---

[14]    I note that the Receiver's duties are somewhat limited. The July 19th CCP Order authorized the Receiver to only collect rents, pay expenses, and to inspect the books and records to complete an inventory of all the assets and liabilities of the Partnership. The July 19th CCP Order does not contemplate liquidation of the Properties and the Receivership expires in six (6) months unless extended by the CCP Court.

11

The other factors identified by the <u>Mylotte</u> Court weigh in favor of retaining jurisdiction. Given the fact that the business relationship between the brothers has broken down to the point that the CCP Action was filed to liquidate the Partnership, it appears very unlikely that an out-of-court arrangement could be reached. The dispute will have to be adjudicated either in the CCP Court or here in Bankruptcy Court. Compared to the July 19th CCP Order, Chapter 7 is a more efficient and cost-effective way to windup and liquidate the Partnership.

Therefore, because the Partnership is operating at a monthly cash flow deficit, there is a pending real estate tax sale of the Properties, and the Receiver has not taken any action to date, it is clear that the interests of the creditors and the debtor would be better served by granting an order for relief and denying the Motion to Dismiss or Abstain Pursuant to §305 of the Bankruptcy Code.

## VI. Conclusion

For the reasons stated above, the Motion to Dismiss or Abstain Pursuant to §305 of the Bankruptcy Code is denied. I will enter an order for relief under Chapter 7 and will direct that an interim trustee be appointed pursuant to §701.

Dated: September 3, 2021                         By the Court,

_____

Mark J. Conway, Bankruptcy Judge  (KM)

12